Anthony Boskovich, No. 121198
Boskovich & Appleton
28 N. First Street, 6th Floor
San Jose, California 95113-1210
policemisconduct@compuserve.com
408-286-5150

Geoffrey D. Allen
1730 Rhode Island Avenue, N.W., Suite 206
Washington, DC 20036
geoffreyallen@verizon.net
202-778-1167

Attorneys for plaintiff JAMES GRANDY

**IN THE DISTRICT COURT OF THE UNITED STATES OF AMERICA**

**CENTRAL DISTRICT OF CALIFORNIA**

JAMES GRANDY,
*Plaintiff*,
v.

UNITED STATES OF AMERICA,
Department of Justice
950 Pennsylvania Ave., NW
Washington, DC 20530,
*Defendant*.

No. CV 09-01270 JHN RZx

PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

Date: 12 July 2010
Time: 2:00 P.M.
Courtroom: 790 Roybal
Judge: Honorable Jacqueline H. Nguyen

## INTRODUCTION

This case presents the court with an interesting situation: the parties agree on the facts for the most part. In this motion, however, the United States chooses to simply ignore one fact, presented to them in initial disclosures, that the assailant was seen to walk into the unit, bypass the metal detector, and hide in an empty cell, all in violation of prison policy and without the knowledge of the lone guard on duty. Additionally, defendant has seemingly been unable to justify its conduct,

evidenced by the fact that not one fact witness or expert has declared the actions of the corrections officer to have been within the applicable standard of care. Adding these telling and crucial facts to a correct exposition of the law totally deflates the defendant's argument.

The motion must be denied.

## STATEMENT OF FACTS[1]

This case arises from an incident which occurred at the U.S. Prison in Victorville, California, a maximum security facility, on November 25, 2006. Plaintiff, an inmate in that facility, was housed in housing unit 6A, where he was attacked by Chavon Wiggins, also an inmate, whose housing unit was 4A. The clear policy of the prison was that inmates were not allowed into other inmates' housing units unless they were part of a work crew, which Mr. Wiggins was not. Against the clear policy of the prison, Mr. Wiggins was allowed to enter the unit without passing through the metal detector because the officer in charge, Ray Raygoza, was not monitoring the metal detector nor watching the inmates as they entered. Having gained access to the unit, Mr. Wiggins was then able to remain there in hiding after the door was locked for at least forty four minutes without being detected. He then attacked and stabbed Mr. Grandy in the neck, torso, and arm, inflicting several serious injuries, the most serious of which, is damage to the spinal cord at the C5-C6 level.

Operational policies, procedures and protocols designed to search, control and provide accountability for prisoners, such as those employed at the Victorville prison are calculated to reduce the risk of attempted escapes, violent assaults and the introduction and trafficking of dangerous contraband and weapons within the prison complex. There is a basic tenet of high security corrections universally held by practitioners in the field that holds that whenever security practices

---

[1]References to the record and evidence substantiating these facts are detailed in plaintiff's Statement of Genuine Issues in Opposition to Motion for Summary Judgment, filed concurrently with this opposition.

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

designed to control prisoner movement and accountability are breached, the likelihood of prisoner escape attempts, violent assaults and the trafficking of dangerous contraband and weapons increases significantly. These outcomes are predictable when prisoners are not accounted for and allowed to enter areas of the prison that are restricted to them.

Because the purpose of the policy restricting inmate access and movement, as well as requiring usage of metal detectors and searches of inmates is, in part, to prevent trafficking of weapons and violent attacks by inmates, and failure to follow these procedures increases the likelihood of these dangerous events. Although the number of random inmate attacks might be low, it is likely that this is due to proper enforcement of the procedure. Because of the failure of Officer Raygoza to follow procedure, the attack occurred and the negligence is a legal cause of the attack and injuries sustained by Mr. Grandy.

**STANDARD OF DECISION**

A party moving for summary judgment bears "the initial responsibility of informing the district court of the basis for its motion ..." (*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) The moving party must demonstrate that no genuine issue of material fact exists for trial. (*Id.* at 322) However, the moving party is not required to <u>negate</u> those portions of the nonmoving party's claim on which the nonmoving party bears the burden of proof. (*Id.*) As a general rule, "[w]hen reasonable persons may disagree as to whether particular conduct constitutes negligence, gross negligence, or recklessness, the question is one of fact to be decided by a jury. (Footnote omitted)" (*Fargo v. City of San Juan Bautista*, 857 F.2d 638, 641 (9th Cir 1988); accord and cited with approval on this point, *Wood v. Ostrander*, 879 F.2d 583, 588, fn. 4 (9th Cir. 1989))



Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

Once the moving party demonstrates that there is no genuine issue of material fact, the nonmoving party must designate "specific facts showing that there is a genuine issue of for trial." (*Celotex*, *supra*, at 324.) The nonmoving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." (*Id.* at 322.)

The adjudication of a summary judgment motion is not a "trial on affidavits." (*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986)) Credibility determinations and weighing of the evidence are solely jury functions. (*Id.* at 255) Inferences drawn from underlying facts must be viewed in the light most favorable to the nonmoving party. (*Matsushita Elec.. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962))

However, there may be no genuine issue of material fact if "the evidence is of insufficient caliber or quantity to allow a rational finder of fact" to find for the nonmoving party. (*Anderson*, *supra*, 477 U.S. at 254) And in some circumstances the factual context may render the nonmoving party's claim implausible, and the nonmoving party must come forward with "more persuasive evidence" to support the claim "than would otherwise be necessary." (*Matsushita*, *supra*, 475 U.S. at 587.)

Additionally, however, a trial court should only grant summary judgment "with caution" because of the drastic nature of the remedy. (*Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986))

//

//

//

//

//

//

//

//

//

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

## ARGUMENT

### A. THE MOTION MUST BE DENIED BECAUSE, AT A MINIMUM, THERE IS A TRIABLE ISSUE OF FACT AS TO HOW CHAVON WIGGINS GAINED ENTRY INTO MR. GRANDY'S HOUSING UNIT AND THE PURPOSE OF PRISON REGULATIONS REGARDING ACCESS, SEARCH, AND MOVEMENT CONTROL OF INMATES.

1. Defendant accurately states the general law of negligence.

Defendant United States gives an accurate, although brief and cursory, overview of the general law of negligence, as far as it goes. (See argument re proximate cause, *infra*.) 18 U.S.C. section 4042 imposes on the United States the duty to house federal inmates safety, and defendant forthrightly acknowledges that duty. Instead, the United States chooses to bring this motion on failure to breach that duty and lack of proximate cause. Those issues will be dealt with in sequence.

2. Officer Raygoza clearly breached the duty by allowing inmate Wiggins to enter the unite by bypassing the metal detector and hiding in the unit with a weapon until his ultimate attack on plaintiff.

Defendant United States presents but one argument that Officer Raygoza was not negligent in the performance of his duties, namely that there is no evidence as to how Chavon Wiggins got into the unit. That statement is quite frankly misleading[2] and untrue. As the Affidavit of Horatio Demarious Smith makes clear,

---

[2]Although plaintiff is not bringing a motion pursuant to Rule 11 at this time, there is certainly an argument that defendant's contention violates Rule 11(b)(4) as a contention made without evidentiary support. The sworn statement of Horatio Demarious Smith was produced in plaintiff's First Supplemental Disclosures on 19 August 2009, and for some unknown reason defendant has chosen not to depose him. Instead, defendant is now claiming that he cannot be called as a witness because plaintiff did not depose him and discovery is closed. It is also interesting to note that, given the reports submitted by the defendant, Mr. Smith never seems to have been interviewed by anybody at the prison in determining the cause of the attack. It is hard to fathom that a maximum security prison could condone the obvious breach of policy that led to the stabbing of an inmate, but every piece of evidence submitted by defendant leads to that sad conclusion.

3. ..... Affiant was walking to the microwave oven which is situated west of his cell. Affiant observed the subject/assailant enter the West Unit Entry Door Slider while the Unit Officer, Ray Raygoza was posted outside of the Unit. Officer Raygoza was facing in a Northwestrenly [sic] direction. The subject/assailant walked around the **"METAL DETECTOR"** in light of the abadon [sic] post at the entry door slider.

4. The subject/assailant entered cell # 120 and waited which was unknown to the Unit Officer, R. Raygora [sic] or stabbing victim James W. Grandy. ....

(Affidavit of Horatio Demarious Smith, ¶¶ 3-4)

Even though defendant is terribly wrong when it claims that "[a]bsent some first-hand testimony (or other admissible evidence) of how Wiggins was able to gain entry [into] Unit 6A, there can be no triable issue as to whether Officer Raygoza breached the duty of care", (Defendant's Points and Authorities, p. 16:8-11), the fact that there is evidence of exactly how Wiggins gained entry and concealed himself, coupled with the tacit admission by omission of argument that with evidence of bypassing the metal detector Officer Raygoza was negligent[3], defeats the motion. Perhaps most tellingly, defendant has not produced a single expert opinion, despite having retained and used a prison practices experts, that opines that Officer Raygoza's conduct in any way met the standard of care. In an abundance of caution, however, plaintiff has submitted the Declaration of Joe McGrath, who explains in detail the existence and purpose of prison policies regarding restriction of inmate movement and use of metal detectors, thereby establishing a breach of the standard of care and negligence.

On that basis, the motion fails.

//

//

//

//

[3]Defendant's stunning argument regarding Officer Raygoza potentially waiving the metal detector requirement for residents as opposed to non-residents is nothing less than breathtaking. Beyond the common sense argument that a maximum security prison is not a place that allows for this sort of benefit for a "resident", the defendant has not, and cannot, substantiate the argument with any evidence that a corrections officer may waive the use of the metal detector.

3. The failure to follow clearly established prison policy was the cause-in-fact of Wiggins' entry into Mr. Grandy's housing unit and the proximate cause of the attack and ultimate injuries.

Defendant's final argument is that its negligence was not the proximate cause of plaintiff's injuries because the attack by Wiggins was a superseding cause because the attack was not foreseeable. Defendant is once again incorrect.

> In *Landeros v. Flood*,17 Cal.3d 399 (Cal. 1976), the court addressed those situations where criminal activity against a plaintiff follows the defendant's alleged negligence; that is, when an intervening act by a criminal constitutes the immediate cause in fact of the plaintiff's injuries for which the plaintiff seeks to recover against the defendant. The *Landeros* court said: "It is well settled in this state … an intervening act does not amount to a 'superseding cause' relieving the negligent defendant of liability … if it was reasonably foreseeable: '[A]n actor may be liable if his negligence is a substantial factor in causing an injury, and he is not relieved of liability because of the intervening act of a third person if such act was reasonably foreseeable at the time of his negligent conduct.' [Citation] Moreover, under section 449 of the Restatement Second of Torts that foreseeability may arise directly from the risk created by the original act of negligence: 'If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby.' (Italics added.) [Citation.]"

*Raven H. V. Gamette*, 157 Cal.App.4th 1017, 1030 (Cal.App. 2008); see also, *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1208-09 (9th Cir. 2003))

Under California law, "[f]oreseeability of harm should ordinarily be determined by a jury." (*Isaacs v. Huntington Memorial Hospital*, 38 Cal.3d 112, 135 (Cal. 1985))

Failure to follow a policy designed to protect from a specific occurrence has been held to establish proximate cause. In *Bullis v. Security Pacific National Bank*, 21 Cal.3d 801 (Cal. 1978), the defendant bank was found to be the proximate cause of loss by failing to follow its procedure and the custom and practice in the banking industry of requiring two signatures. In holding that there was no superseding cause precluding a finding of proximate cause, the California Supreme Court stated:

> While Lampe's intentionally tortious conduct caused the estate's loss, his actions cannot insulate appellant from liability for its negligent conduct. A person is liable for any injury proximately or substantially caused by his negligent conduct, even if a third person's conduct directly precipitates the injury. (Citation) "If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby." ( Rest.2d Torts, § 449, other citations omitted)



Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

> The risk that one co-executor would act alone and make unauthorized withdrawals was significant in establishing the standard of care. The deviation from this standard allowed that very risk to become a reality in this case. Therefore, the occurrence of this foreseeable act does not break the chain of legal causation which holds appellant liable for the estate's loss. (Citation)
>
> Appellant asserts that the imposition of liability would punish appellant for its failure "to control the conduct of another," i.e., Lampe. (Citation) This contention overlooks the fact that the trial court merely reaffirmed the obvious proposition that appellant owed a duty of due care to its depositors. Appellant was held liable for the estate's loss because its conduct, in opening and maintaining the estate's account, did not meet the standard of reasonable care expected of a bank. Its negligent conduct resulted in a reasonably foreseeable injury. Thus, liability was based on appellant's own negligence, not on a breach of any duty to control Lampe. (Citation)

(*Bullis*, *supra*, at 812-13)

In *Avitia v. United States*, 24 Fed. Appx. 771, 2001 U.S. App. LEXIS 26806 (9th Cir. 2001), the Ninth Circuit addressed this issue in the context of a patient assaulted by her doctor that occurred in part due to the violation of a policy in a clinic that a chaperone be provided in a gynecological examination. (*Id.* at 772-73) The United states made the same argument there that it makes here regarding proximate cause. The Ninth Circuit disagreed:

> The United States' more forceful argument is that the clinic's (and its employee's) failure to follow the chaperone policy is not the proximate cause of Avitia's injuries because Shohayeb's assault on Avitia was a superseding cause. A superseding cause is an intervening act that relieves a negligent actor of liability. (*Werkman v. Howard Zink Corp.*, 97 Cal. App. 2d 418, 218 P.2d 43, 47-48 (Cal. 1950)) An intervening act is a superseding cause if it is not foreseeable, or is highly unusual or extraordinary. (*Schrimscher v. Bryson*, 58 Cal. App. 3d 660, 130 Cal. Rptr. 125, 127 (Cal. Ct. App. 1976)) The chaperone policy at the clinic at the time the complained-of assault took place was put in place in part to ensure patient safety. It is no stretch of imagination that such safety concerns would include the prevention of the kind of inappropriate conduct complained of here. If the policy was put in place to prevent such conduct, the assault was foreseeable and Shohayeb's intentional conduct did not supersede the negligent acts of the clinic and Barbosa.

(*Id*. at 774-75; accord, *Sheridan v. United States*, 487 U.S. 392, 401-02 (1988))

Such is the case here. As the Declaration of Joe McGrath makes clear,

> 11. Operational policies, procedures and protocols designed to search, control and provide accountability for prisoners, such as those employed at USP, are calculated to reduce the risk of attempted escapes, violent assaults and the introduction and trafficking of dangerous contraband and weapons within the prison complex. There is a basic tenet of high security corrections universally held by practitioners in the field that holds that whenever security practices designed to control prisoner movement and accountability are breeched, the likelihood of prisoner escape attempts, violent assaults and the trafficking of dangerous contraband and weapons

> increases significantly. These outcomes are predictable when prisoners are not accounted for and allowed to enter areas of the prison that are restricted to them.

It is equally clear that the prison had a clear and direct policy that inmates were not allowed in other housing units absent some special circumstances, not present here, and that all inmates entering the housing unit were to be screened through the metal detector. (Exhibit C to Declaration of Anthony Boskovich, at pp. 9, 11, 23)

Defendant's insinuation regarding the source of the weapon at footnote 5 is nothing but a red herring. Inmate Wiggins should not have been allowed to bypass the metal detector with or without a weapon, and defendant has not presented any evidence that any inmate should be allowed to have possession of a metal knife in a maximum security prison housing unit because that is, quite frankly, an absurd proposition. But it is undisputed that the weapon and Wiggins were there and in combination they committed the brutal assault on plaintiff. Therefore, the causal connection, as argued above, is clear.

Finally, defendant's protestations notwithstanding, inmate-on-inmate assaults with weapons were not a rare occurrence. By the prison's own statistics, for fiscal years 2005 and 2006 the frequency of assaults with weapons was from 56 to 69 assaults per 5000 inmates, a rate significantly higher than the average for federal prisons at the same security level. (See Exhibit B to Declaration of Anthony Boskovich)

Thus, under California and Federal law, the attack on plaintiff was foreseeable because the defendant had clear policies and procedures designed to prevent the very act that occurred, and but for the failure of Officer Raygoza to follow those procedures the attack on plaintiff would not have occurred. In sum, there is little question that the failure to follow established policies and procedures rendered the negligent conduct to be a proximate and legal cause of plaintiff's injuries.

The motion must be denied.



Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

**CONCLUSION**

Defendant's protestations to the contrary, the evidence in this case is clear and undisputed that but for the failure of Officer Raygoza to follow the clear policies and procedures of the prison the brutal attack on plaintiff James Grandy would never have occurred, and the law of the State of California is equally clear that this negligent conduct was the proximate cause of plaintiff's damages. For the reasons stated above, the motion must be denied.

Dated: 20 June 2010

/s/ Anthony Boskovich

Anthony Boskovich
Attorney for plaintiff

/s/ Geoffrey Allen

Geoffrey Allen
Attorney for plaintiff