ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division
SEKRET T. SNEED (SBN 217193)
DONALD W. YOO (SBN 227679)
Assistant United States Attorneys
        Room 7516, Federal Building
        300 North Los Angeles Street
        Los Angeles, California 90012
        Tel:          (213) 894-3531/3994
        Fax:          (213) 894-7819
        Email:        sekret.sneed@usdoj.gov
                      donald.yoo@usdoj.gov

Attorneys for Defendant
UNITED STATES OF AMERICA

# UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JAMES GRANDY, an individual,<br><br>        Plaintiff,<br><br>    vs.<br><br>UNITED STATES OF AMERICA,<br><br>        Defendant. | No. CV09-01270-JHN (RZx)<br><br>**DEFENDANT UNITED STATES' POST-TRIAL MEMORANDUM RE: DISCRETIONARY FUNCTION EXCEPTION**<br><br><br>Honorable Jacqueline H. Nguyen |

Pursuant to the Court's February 24, 2011 order, Defendant United States of America submits this Post-Trial Memorandum addressing the discretionary function exception, 28 U.S.C. § 2680(a), to the Federal Tort Claims Act ("FTCA") as it applies to the facts of this case. Specifically, whether the language directing housing unit officers to ensure that inmates entering or exiting the housing unit clear the metal

detector during an open movement as set forth in the Post Orders gives a housing unit officer discretion on how to accomplish that responsibility.[1]  Although there is no case law directly on point, the application of the discretionary function exception to the written policies of other federal agencies clearly demonstrates that the Post Orders grant housing unit officers discretion to carry out their duties.

## I.   DISCUSSION

## A.   OFFICER RAYGOZA'S CONDUCT INVOLVED AN ELEMENT OF JUDGMENT OR CHOICE.

### 1.   The Post Orders at USP Victorville Were Intended to be Guidelines.

At issue in this case is the Post Order section which provides that in addition to a housing unit officer's other responsibilities during an open movement, "if a metal detector is present, ensure that each inmate is clearing it." (Exhibit 50-23.) Notwithstanding the seemingly mandatory nature of that statement, that section, and in fact the entire Post Order itself, was intended to serve as a guideline for housing unit officers at USP Victorville.  Proof of that fact is set forth in the language of the Post Order itself:  housing unit officers are "*expected to use their initiative and sound correctional judgment in all situations covered in these post orders*." (Exhibit 50-24, emphasis added.)  As such, officers are entrusted with discretion in carrying out the myriad responsibilities outlined in the Post Orders.

The Ninth Circuit has explained that when determining whether an agency manual or policy specifically prescribes a course of action to be followed for purposes of the discretionary function exception analysis, "the presence of a few, isolated mandatory provisions does not transform an otherwise suggestive set of guidelines into binding agency regulations." *Sabow v. United States*, 93 F.3d 1445, 1453 (9th Cir. 1996) (citing *Chamberlin v. Isen*, 779 F.2d 522, 525 (9th Cir. 1985));

---

[1]   As the Court requested that the parties only address the issue of whether the use of metal detectors during an open movement as set forth in the Post Orders fall within the discretionary function exception, this Memorandum will not address whether a housing unit officer had discretion on how to identify "out of bounds" inmates.

1

*see also Irving v. United States*, 162 F.3d 154, 163-66 (1st Cir. 1998) (OSHA regulations containing "a sprinkling of mandatory directives" do not mandate a particular method of conducting inspections or otherwise materially restrict inspectors' flexibility, and general OSHA inspections "fit comfortably within the discretionary function exception").  Instead, a court should determine whether the regulation or policy, taken as a whole, represents guidelines for broad policy goals. *See Miller v. United States*, 163 F.3d 591, 594 (9th Cir. 1998).  If so, then the mere use of a mandatory term will not be found to rob a government actor of all discretion, if those goals are attainable only through the exercise of discretion.  *See id.* ("[t]he existence of some mandatory language does not eliminate discretion when the broader goals sought to be achieved necessarily involve an element of discretion.").

The case of *Aragon v. United States*, 146 F.3d 819 (10th Cir. 1998), is instructive.  There, property owners brought an FTCA action alleging that the Air Force had  negligently contaminated groundwater at a former military base.  *See id.* at 824.  Plaintiffs argued that the Air Force breached specific mandatory requirements set forth in several Air Force manuals which, if followed, would have avoided groundwater contamination.  *See id.*  The Air Force manual at issue, however, expressly disclaimed that it was "intended for guidance" and "[b]ecause of the varied nature of industrial problems, principles rather than practices are emphasized."  *Id.*

In affirming the district court's dismissal of the FTCA lawsuit under the discretionary function exception, the Tenth Circuit noted that "[a]n agency manual, in contrast to a regulation, is not necessarily entitled to the force and effect of law." *Aragon v. United States*, 146 F.3d at 824 (citation omitted).  The court explained, "[t]his is particularly true if the agency did not intend the manual to be mandatory, but rather intended it as a guidance or advisory document." *Id.* (citation omitted); *see also Hamlet v. United States*, 63 F.3d 1097, 1103-05 (Fed. Cir. 1995) (holding that agency personnel manual is not binding if, among other factors, agency did not intend for it to be binding); *WildEarth Guardians v. United States Fish & Wildlife Serv.*, 622

F.Supp.2d 1155, 1164 (D. Utah 2009) (holding that agency's handbook could not create mandatory directive because it was "intended as a guide" and "was not meant to have the force of law.").

Similarly herein, the BOP intended that the Post Orders serve as guidelines for housing unit officers in carrying out their statutory duty under 18 U.S.C. §4042 to provide for the safekeeping of inmates.  Indeed, Mr. Grant testified at trial that given the day-to-day realities of supervising inmates at a United States Penitentiary, the Post Orders were intended to serve as guidance for housing unit officers who are expected to use their initiative and judgment in the performance of their duties.  As in *Aragon v. United States*, the BOP intended that the Post Orders serve as guidelines rather than a rigid set of mandatory directives which officers must follow, regardless of the circumstances.  Accordingly, Officer Raygoza had discretion in how he would ensure that inmates clear the metal detector during the noontime open movement on November 25, 2006, and any purported negligence that resulted from the exercise of his discretion, is barred by the discretionary function exception.  *See Mitchell v. United States*, 149 F.Supp.2d 1111, 1115 (D. Ariz. 1999).

**2.     The Post Order Section Governing Open Movements Gives Housing Unit Officers Discretion On How To Execute Their Duties.**

Additionally, the specific Post Order section at issue gives housing unit officers discretion on how to execute their responsibilities.  (Exhibit 50-23.)  The Supreme Court defines a "discretionary act" as an act that involves an element of judgment or choice.  *United States v. Gaubert*, 499 U.S. 315, 322 (1991).  The element of judgment or choice is not satisfied if a statute, regulation, or policy specifically prescribes a course of action for an employee to follow because the employee has no rightful option but to follow the directive.  *See id.*  Here, Officer Raygoza had discretion to carry out his responsibilities during an open movement in two respects: (1) housing unit officers are often faced with competing responsibilities during an open movement which requires them to balance sometimes conflicting duties; and (2)

3

the Post Orders do not specifically state how a housing unit officer is to ensure that inmates clear the metal detector.

a.    <u>Housing Unit Officers Must Balance Conflicting Responsibilities During an Open Movement.</u>

Officer Raygoza and Mr. Grant testified at trial that during an open movement, housing unit officers have myriad responsibilities, including, but not limited to, making sure that inmates entering or exiting the unit clear the metal detector, monitor those inmates waiting to enter the housing unit from the outside, observe inmates already inside the housing unit, and conduct random "pat" searches of inmates entering and exiting the unit.  (*See*, *e.g.*, Exhibit 50-21; 50-24.)  No federal statute, regulation, or BOP policy proscribes how a housing unit officer is to manage these multiple tasks and responsibilities.  To the contrary, housing unit officers must balance and prioritize these varying responsibilities depending on the circumstances.  That balancing inherently involves the exercise of discretion.

The case *Weissich v. United States*, 4 F.3d 810 (9th Cir. 1993), is illustrative.  There, the family of a federal prosecutor brought suit under the FTCA alleging, among other things, that the U.S. Probation Service negligently failed to warn the prosecutor of an impending threat by a federal probationer.  *See id.* at 814.  At issue were the U.S. Probation Service's policies which plaintiff argued imposed mandatory duties on probation officers to warn a foreseeable victim of a risk of harm by probationers.  *See id.* at 813.  In affirming the district court's granting of summary judgment in favor of the government under the discretionary function exception, the Ninth Circuit noted that the U.S. Probation Service's policies set out dual obligations on probation officers (*i.e.*, protect the public, and promote the rehabilitation of the probationer) and "[b]ecause these interests may conflict, officer discretion in balancing them is *inherent*."  *Id.* at 814 (emphasis added).

Likewise here, Officer Raygoza testified that it was his goal to ensure that every inmate cleared the metal detector when entering the housing unit.  However, he

4

had to balance that responsibility with his other correctional duties, such as
monitoring the inmates coming out of and going into the housing unit, as well as
monitoring those inmates already inside the unit.  In order to accomplish those
responsibilities, Officer Raygoza testified that he would vary his positioning in and
around the sallyport in order to mitigate against the predictability of his movements,
to be able to observe inmates both inside and outside the housing unit, monitor the
metal detector, and be able to conduct random "pat" searches of inmates during the
open move.  As some of those responsibilities may conflict – *i.e.*, while performing a
random "pat" search, the officer's attention may be drawn away momentarily from the
metal detector – a housing unit officer's discretion in carrying out his or her duties
during an open movement is inherent.  *See Weissich v. United States*, 4 F.3d at 814.

        b.   The Post Orders Do Not Mandate How an Officer is to Ensure
            That Inmates Clear the Metal Detector During an Open Move.

Furthermore, the Post Order section on open movements does not instruct
housing unit officers how they are to ensure inmates clear the metal detector during
an open move.  Instead, the Post Orders merely state that "if a metal detector is
present, ensure each inmate is clearing it."  (Exhibit 50-23.)  Therefore, how a
housing unit officer is to ensure that inmates clear the metal detector is necessarily
left to his or her discretion.  *See, e.g.*, *Powers v. United States*, 996 F.2d 1121, 1125
(11th Cir. 1993) (holding that regulation did not defeat discretionary function
exception because it failed to provide a "fixed or readily ascertainable standard,"
notwithstanding its use of the word "shall"); *Kiehn v. United States*, 984 F.2d 1100,
1106-07 (10th Cir. 1993) ("if a government official in performing his statutory duties
must act without reliance upon a fixed or readily ascertainable standard, the decision
he makes is discretionary and within the exception of the [FTCA].").

The case of *Miller v. United States*, 163 F.3d 591 (9th Cir. 1998), is instructive.
There, the plaintiff sued the U.S. Forest Service for its allegedly negligent handling of
a forest fire that spread from a national forest onto the plaintiff's property.  *See id.* at

5

592. In affirming the district court's dismissal of the FTCA action under the discretionary function exception, the Ninth Circuit held that because there were "no specific directives that mandate[d] specific action in a multiple fire situation," the first prong of the discretionary function exception had been met. *Id.* at 595. The court noted that although there were firefighting guidelines in place, those guidelines "[did] not eliminate discretion because they. . . did not tell the Forest Service to suppress the fire in a specific manner and within a specific period of time." *Id.*

Similarly here, the Post Orders do not specify how a housing unit officer is to ensure that inmates clear the metal detector during an open move. Rather, Officer Raygoza and Mr. Grant testified at trial that in order for housing unit officers to carry out his or her responsibilities during an open move, as set forth in the Post Orders, it is commonplace and appropriate for a housing unit officer to generally position himself or herself in three areas in and around the sallyport. They testified that those positions would allow the housing unit officer to monitor inmates entering and exiting the housing unit, observe inmates already inside the housing unit, observe inmates to make sure they clear the metal detector, as well as allow the housing unit officer to perform random "pat" searches of inmates during the open move period.[2]

Although there have been cases where the discretionary function exception was found to be inapplicable due to an officer's failure to comply with certain duties in their institution's post orders, those cases, unlike here, involved instances where an officer failed to perform his or her duties at all. For example, in the unpublished decision *Garza v. United States*, 161 Fed. Appx. 341, 2005 WL 3478009 (5th Cir. 2005), the Fifth Circuit reversed the district court's granting of a motion to dismiss a prisoner's FTCA action under the discretionary function exception because a BOP

[2] Indeed, Plaintiff's correctional expert Mr. Joseph McGrath's testimony that inmates to be patted down during an open move might be held aside until all the other inmates had cleared the metal detector acknowledges the necessity of utilizing discretion in accomplishing a housing unit officer's multiple duties. Nowhere in the Post Orders is such a practice mentioned. Consequently, Mr. McGrath's very suggestion is an admission that the metal detector procedures set forth in the Post Orders inherently requires an officer to utilize his discretion.

1   staff member had failed to comply entirely with the relevant post orders.  There, the

2   prison's post orders contained specific language regarding a housing unit officer's

3   duty to patrol the prison's yard during a closed movement period.  *See id.* at *2.

4   Because the housing unit officer failed to patrol the yard, at all, the court found the

5   failure to do so was not protected by the discretionary function exception.  *See id.*

6          Unlike *Garza*, it is undisputed in this case that Officer Raygoza was manning

7   his post in the sallyport during the noon-time open movement on November 25, 2006

8   per the Post Orders.  Further, Plaintiff has proffered no evidence that Officer Raygoza

9   either deliberately let inmate Wiggins evade the metal detector.  Indeed, Plaintiff's

10  expert witness specifically denied that any such proof existed.  As Officer's

11  Raygoza's actions during the open movement conformed with the exercise of

12  discretion contemplated by the Post Orders, judgment should be entered in favor of

13  the United States.

14  **B.     OFFICER RAYGOZA'S CONDUCT INVOLVED PUBLIC POLICY**

15  **        CONSIDERATIONS.**

16         Because Officer Raygoza's challenged acts involved discretion, the Court must

17  next determine whether the judgment exercised was of the type that the discretionary

18  function exception seeks to protect.  *See Berkovitz v. United States*, 486 U.S. 531, 536

19  (1988).  When making such a determination, the Court should start from the premise

20  that "[w]hen established governmental policy, as expressed or implied by statute,

21  regulation, or agency guidelines, allows a Government agent to exercise discretion, it

22  must be presumed that the agent's acts are grounded in policy when exercising that

23  discretion." *United States v. Gaubert*, 499 U.S. at 324.  Even without this

24  presumption, however, the Court should nevertheless conclude that the nature of the

25  actions taken by Officer Raygoza involved considerations which were, at the very

26  least, "susceptible to policy analysis."

27         Under this second prong, courts have consistently held that the manner in

28  which the BOP supervises inmates involves the types of decisions that the

7

discretionary function exception was designed to shield – *i.e.*, decisions based upon the need to safeguard staff and inmates, preserve internal order, and maintain institutional security.  *See, e.g.*, *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) ("[p]rison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors[,]" which "are inherently grounded in social, political, and economic policy"); *Mitchell v. United States*, 149 F.Supp.2d at 1114 ("[d]ecisions by governmental officials as to the day-to-day security needs of a prison, including the number of guards to employ to supervise a given area . . . are judgment calls and choices based on policy determinations that seek to accommodate safety [goals] and the reality of finite agency resources.").  Here, because Officer Raygoza's decisions as to where and how to monitor inmates during an open move were occasioned by the very types of factors referenced in *Dykstra* and *Mitchell* (*i.e.*, safety, internal order and security), such discretion necessarily involves considerations of public policy.  *See Alfrey v. United States*, 276 F.3d 557, 565 (9th Cir. 2002) ("balancing the need to provide inmate security with the rights of inmates to circulate and socialize within the prison involves considerations based upon public policy").

## II.   CONCLUSION

Based on the foregoing as well as the evidence at trial, the United States of America  respectfully requests that judgment be entered in its favor.

Respectfully submitted,

Dated:   March 16, 2011

ANDRÉ BIROTTE JR.
United States Attorney
LEON W. WEIDMAN
Assistant United States Attorney
Chief, Civil Division

*/s/ Donald W. Yoo*
_____
DONALD W. YOO
SEKRET T. SNEED
Assistant United States Attorneys
Attorneys for Defendant
United States of America

8