1 Anthony Boskovich, No. 121198
Boskovich & Appleton
2 28 N. First Street, 6th Floor
San Jose, California 95113-1210
3 policemisconduct@compuserve.com
408-286-5150
4

5 Geoffrey D. Allen
1730 Rhode Island Avenue, N.W., Suite 206
6 Washington, DC 20036
geoffreyallen@verizon.net
7 202-778-1167

8 Attorneys for plaintiff JAMES GRANDY

9 **IN THE DISTRICT COURT OF THE UNITED STATES OF AMERICA**

10 **CENTRAL DISTRICT OF CALIFORNIA**

11

12 JAMES GRANDY,
                        *Plaintiff,*
13 v.

No.  CV 09-01270 JHN RZx

14

PLAINTIFF'S POST-TRIAL
BRIEF REGARDING
15 UNITED STATES OF AMERICA,     DISCRETIONARY FUNCTION
Department of Justice           EXCEPTION
15 950 Pennsylvania Ave., NW
16 Washington, DC 20530,
                        *Defendant.*
17

18

19        At the conclusion of trial in this matter, the Court requested supplemental

20 briefing on the issue of the so-called "discretionary function exception" codified at 28

21 U.S.C. section 2680, subdivision (a).  As will be shown below, and consistent with this

22 Court's prior rulings, the exception does not apply in this case because the evidence

23 is undisputed that Corrections Officer Raygoza was inattentive in his mandatory

24 duties, namely by failing to monitor the metal detector at the entrance to Unit 6-A

25 during an "open movement", thereby allowing Chavon Wiggins to enter the unit with

26 two knives and ultimately to viciously attack and stab plaintiff multiple times from

27 behind.

28

A brief recap of the undisputed evidence is in order.  First, USP-Victorville issues "Post Orders" that outline the duties of its housing officers, admitted into evidence as Exhibits 32 and 50.  While these orders contain general language with respect to some duties which clearly impart discretion on the officers, there are certain <u>mandatory</u> duties enumerated in those orders.

> You will be expected to ... enforce all rules and regulations. ...  It is critical to ensure inmates follow all rules and regulations pertaining to the housing units, not only for the security of the institution, but for the well being of all inmates. ... The unit officer is accountable for all inmates authorized to be in the unit.  **Inmates are not allowed to visit between units.  This is not to be tolerated and disciplinary action should be taken.** ... During the working day, only authorized inmates will be allowed in the unit ..." (Emphasis in original)]
(Exhibits 32 and 50, p. 1)

> Inmates will be subjected to pat searches and/or metal detector when entering or exiting the unit. ..., **THERE WILL BE NO INTRA-UNIT VISITING**.  Any inmates found in another unit without authorization will receive an incident report for being in an unauthorized area and the Operation ... (Emphasis in original)]
(Exhibits 32 and 50, p. 11)

> [<u>MOVEMENTS</u> ...  The unit officer should monitor incoming and outgoing inmate traffic, randomly conducting pat searches and if a metal detector is present, ensure each inmate is clearing it."])
(Exhibits 32 and 50, p. 23)

At the conclusion of the orders, there is general language describing the "orders" as "guidelines", indicating that the orders "are not intended to describe in detail all of the duties assigned ..." and that the officers "are expected to use their initiative and sound correctional judgment ..."  (Exhibits 32 and 50, p. 24)

Officer Raygoza testified that these orders provided him with <u>no discretion</u> with respect to requiring inmates to pass through the metal detector, and Sean Grant did not dispute this.  It is mandatory that inmates <u>must pass through the metal detector when entering or leaving the unit</u>.  Instead, these two witnesses for defendants emphasized that the housing officer had discretion as to where he positioned himself during an open move, going to great lengths to point out that the officer might

1   position himself or herself just outside the front door in a position where the metal

2   detector could still be monitored.  This of course is covered in the Post Orders as well,

3   ("Weather [sic] it is at the front door to the unit, leading out to the compound or at

4   the USP, the door leading out to the corridor." (Exhibit 32, p. 23), and is not disputed

5   because it is irrelevant.

6          What matters is that Chavon Wiggins testified that he bypassed the metal

7   detector while Officer Raygoza was inattentive, a fact corroborated by Woodie

8   Ashfield and Horatio Smith.  The inmates testified that Officer Raygoza was not

9   monitoring the metal detector but instead was outside and looking away.  And

10  critically, there is not one shred of evidence that contradicts this testimony.[1]

11         The issue at hand, therefore, becomes whether the Post Orders created a

12  mandatory duty to be performed by corrections officers, or whether every "duty" of

13  a corrections officer is discretionary within the meaning of the statute, thereby

14  granting immunity in <u>every</u> case.  This statement is not an exaggeration of the

15  government's position, because if a prison guard can simply not watch the metal

16  detector, as the orders clearly state he must do, then it is hard to fathom what the

17  United States could be liable for in the prison context.  Taking the government's

18  argument to its logical extreme, if Officer Raygoza fell asleep at his post, the

19  discretionary function immunity would shield the United States from liability.  That

20  is absurd and not the law.

21         The Ninth Circuit has succinctly explained the proper analysis.

22                 We answer the question whether the discretionary function
            exception bars a particular claim by applying a two-part test. (Citation)
23          First, we must decide whether the challenged conduct is discretionary,
            that is, whether it "involves an element of judgment or choice."
24          (Citation) "This element is not met 'when a federal statute, regulation or

25  _____

26         [1]Sean Grant has no memory of reviewing the "lost" video of the entry.
    Officer Raygoza was careful to limit his testimony to the fact that he never
27  "intentionally" allowed an inmate to bypass the metal detector, thus begging the
    question before this Court.

28  Plaintiff's Post-Trial Brief re Discretionary Function Immunity                    Page 3

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

policy specifically prescribes a course of action for an employee to follow.'" (Citation) If the act is not discretionary, the government is not immune. (Citation)

Second, if the challenged conduct is discretionary, we "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." (Citation) "Only those exercises of judgment which involve considerations of social, economic, and political policy are excepted from the FTCA by the discretionary function doctrine." (Citation) "The primary focus of the second part of the test is on 'the nature of the actions taken and on whether they are susceptible to policy analysis.'" (Citation) "When a statute, regulation or agency guideline allows a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." (Citation)

(*Alfrey v. United States*, 276 F.3d 557, 561-562 (9th Cir. 2002))

There is little question that the requirement that inmates clear the metal detector is couched in mandatory language. (Exhibits 32, 50, p. 11: "Inmates <u>will</u> be subjected to pat searches <u>and/or</u> metal detector when entering or exiting the unit.") The word "will" is <u>mandatory</u>. (See *United States v. UPS Customhouse Brokerage, Inc.*, 575 F.3d 1376, 1382 (Fed.Cir. 2009); see also *Seltzer v. Chesley*, 512 F.2d 1030, 1035-36 (9th Cir. 1975); *Bonner v. Arizona Department of Corrections*, 714 F.Supp. 420, 425 (D. AZ 1989))

But, the United States seems to be arguing that the characterization of the "orders" as "guidelines" magically demotes the mandatory to the discretionary. Not so.

In *Navarette v. United States*, 500 F.3d 914 (9th Cir. 2007), the Ninth Circuit, in finding no discretionary function exception, made clear:

> However, Navarette's argument finds more traction in the Army Corps' "Lake Sonoma Safety Plan". The Safety Plan's checklist includes an instruction that "[d]angerous terrain conditions, such as drop-offs, etc, will be properly marked or fenced ." (Emphasis added.) The government argues that compliance with this instruction was discretionary because the Safety Plan's preface states: "The program and checklist contained herein are not considered complete or entire since programs will be added, deleted, or modified as the need presents itself, and the checklist is presented only as a guide in the accomplishment of responsibilities." According to the government's argument, if the checklist was merely "a guide in the accomplishment of responsibilities", then park employees had discretion as to whether or not to follow the checklist's instructions. However, in light of the preface's explanation

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

Law Offices of Anthony Boskovich 28 North First Street, 6ᵗʰ Floor, San Jose, CA 95113 (408) 286-5150

1   that "[t]he program and checklist contained herein are not considered
2   complete or entire", the "only as a guide" language suggests that employees were not to view the checklist as encompassing the entirety of their duties.   <u>That the listed requirements may not have been</u>
3   <u>comprehensive does not mean that they were not mandatory.</u>
4   <u>Moreover, prefatory language introducing flexibility into the government's duties does not trump the government's imposition of specific duties on itself.</u>
5   (*Id.* at 917 (emphasis added); see also, *Brembry v. United States*, 2011 U.S. Dist. Lexis
6   3302 (1/13/11) at *12-13 (W.D. VA 2011); *Garza v. United States*, 161 Fed. Appx. 341, 344-45 (5ᵗʰ Cir. 2005))

7   The language in the Post Orders here mirror the language in *Navarette*, *supra*, and the

8   mandatory nature of the language, as understood by <u>each</u> of the defense witnesses, and

9   the reference to the orders being "guidelines" does <u>not</u> trump the mandatory nature

10   of the order itself.[2]   In sum, the language is clear: <u>every</u> inmate <u>must</u> clear the metal

11   detector.[3]

12   Defendants also seem to argue that the job of being a prison guard is so hard

13   and so complicated that virtually every decision made is discretionary and thereby

14   cloaked with immunity.  Again, this is simply not the law.

15   Perhaps the best explanation of the exception comes from the Second Circuit,

16   having developed a so-called "negligent guard" test with respect to discretionary

17   functions.  (See, *e.g.*, *Triestman v. Federal Bureau of Prisons*, 470 F.3d 471, 475 (2ⁿᵈ Cir.

18   2006) The Second Circuit explains:

19

20   ───────────────

21   [2]Defendant's citation in closing argument to *Aragon v. United States*, 146 F.3d 819 (10ᵗʰ Cir. 1998) is not helpful to it.  In *Aragon*, *supra*, a complicated
22   environmental case regarding the best way to deal with hazardous waste, there were many references within the manual that specifically granted the Air Force
23   discretion.  That is not the case here: inmates were <u>required</u> to pass through a metal detector.  That is not rocket science, and there is no middle ground.  (See
24   generally, *Alfrey*, *supra*, at 566-67)

25   [3]Mr. Grant's testimony that wheelchair-bound inmates are not required to pass through the metal detector does not even remotely diminish the mandatory
26   nature of the order.  It would be impossible for the wheelchair to pass through the metal detector.  But Mr. Grant was equally clear that this inmate must be
27   physically searched.  There is no need for authority to show that the impossible does not negate the rule.

28   Plaintiff's Post-Trial Brief re Discretionary Function Immunity                    Page 5

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113  (408) 286-5150

1    For example, the official assigned to inspect the machine may in laziness
2    or haste have failed to do the inspection he claimed (by his initials in the
     log) to have performed; the official may have been distracted or
     inattentive, and thus failed to notice the frayed cable; or he may have
3    seen the frayed cable but been too lazy to make the repairs or deal with
     the paperwork involved in reporting the damage.  Such negligent acts
4    neither involve an element of judgment or choice within the meaning of
     *Gaubert* nor are grounded in considerations of governmental policy.

5    ...

6
      For the reasons further developed below, we believe that if the inspector
7    failed to perform a diligent inspection out of laziness or was carelessly
     inattentive, the D[iscretionary] F[unction] E[xception] does not shield
8    the United States from liability.
           We acknowledge that the text of the DFE is somewhat ambiguous,
9    and conceivably could be interpreted to bar damage suits based on any
     actions or decisions that are not directly controlled by statute or
10   regulation.  In particular, it is unclear what weight to give to the
     concluding phrase of the DFE, which asserts that the exception is
11   applicable "whether or not the discretion involved be abused."  (28
     U.S.C. § 2680(a))   Reading the words out of context, one might
12   characterize an official's lazy or careless failure to perform his or her
     discretionary duties with due care as an "abuse of discretion".  Reading
13   the statute in this fashion, however, would lead to absurd results.  For
     example, the driver of a mail truck undoubtedly exercises discretion in
14   the manner of driving and makes innumerable judgment calls in the
     course of making his or her deliveries.  In some manner of speaking,
15   therefore, one might characterize it as an "abuse of discretion" for that
     driver to fail to step on the brake when a pedestrian steps in front of the
16   car, to fail to signal before turning, or to drive 80 mile per hours in a 35
     mile per hour zone.  Such a characterization, however, would effectively
17   shield almost all government negligence from suit, because almost every
     act involves some modicum of discretion regarding the manner in which
18   one carries it out.  Such a result is not required by the language of the
     DFE and would undercut the policy aims at the heart of the FTCA.  We
19   therefore would be reluctant to adopt that reading of the statute if that
     question had never before been considered.
20   (*Coulthurst v. United States*, 214 F.3d 106, 109-110 (2nd  Cir. 2000))

21        The evidence in this case is that the policy was clear and that either through a

22   lack of understanding or simple inattentiveness, or worse, Officer Raygoza failed to

23   follow it.  The exception does not apply in that situation.  Officer Raygoza failed to

24   follow his direct and clear orders by allowing inmate Wiggins into the unit and

25   allowing him, as well as the majority of other inmates, to bypass the metal detector.

26        Finally, any reliance on *Mitchell v. United States*, 149 F.Supp.2d 1111 (D. AZ

27   1999) is misplaced because it is clearly distinguished on its facts.  In *Mitchell*,

28   Plaintiff's Post-Trial Brief re Discretionary Function Immunity                                    Page 6

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113 (408) 286-5150

1
2
3
4
5

  The core of Plaintiff's claims is that Defendant breached its duty to maintain a reasonably safe living area for Plaintiff, to have adequate staff supervising the area to prevent inmates from obtaining dangerous weapons, and to maintain emergency duress alarms in areas where supervision is impossible.  Plaintiff also alleges that the possibility of an unprovoked assault was known to Defendant's agents and that Defendant took no precautionary measures to prevent such an event.  Plaintiff states that Defendant's correctional service manual obligates Defendant to have officers supervising the area, and the failure to do so results in negligence per se.

6 (*Id.* at 1112)

7 Dismissing plaintiff's argument that he was owed a duty to keep "out of bounds"

8 inmates out of his housing unit, the district court found the policy decisions to be

9 discretionary and therefore cloaked with immunity.  (*Id.* at 1115-16)

10   Taken <u>out of context</u>, *Mitchell* might be argued to hold that decisions of whether

11 to "follow the rules" in a Federal prison is always subject to discretionary function

12 immunity.  But, taken <u>in context</u>, it becomes clear that what the *Mitchell* court really

13 did was to find that there was no mandatory rule, and therefore the immunity applied.

14   The entirety of the Ninth Circuit's opinion on appeal in *Mitchell* supplies the

15 context:

16
17
18
19
20
21

  The district court properly granted summary judgment to the defendant.  <u>Mitchell did not come forward with any evidence showing that prison officials violated their own regulations. Although the prison may have been obligated to lock the doors between the Navajo Unit and the rest of the prison, the regulations do not require the prison to lock the doors within the Navajo Unit, the unit in which all of Mitchell's assailants were housed. The decision not to lock the door between the two sides of the Navajo Unit accordingly falls within the discretion of prison officials,</u> (see generally *Calderon v. United States*, 123 F.3d 947 (7th Cir. 1997)), and, as the district court properly found, the discretionary function exception to the Federal Tort Claims Act bars this suit.

(*Mitchell v. United States*, 20 Fed. Appx. 636, 636-37 (9th Cir. 2001) [emphasis added])

23 Thus, *Mitchell* is of no precedential value here because it was a case involving the total

24 lack of evidence with respect to the crucial question: was there a mandatory policy?

25   With that in mind, there are several unpublished cases that clearly hold that the

26 failure of a guard to follow a post order is not cloaked with immunity.  In *Brembry v.*

27 *United States*, 2011 U.S. Dist. Lexis 3302 (1/13/11) (W.D. VA 2011), the guard left his

28 Plaintiff's Post-Trial Brief re Discretionary Function Immunity       Page 7

1  post despite a clear post order that "[t]he Unit Officer will remain inside the inner

2  door of the Unit during controlled movements."  (*Id.*, at \*12)  Facing the identical

3  arguments presented here, the Court held that "[g]iven the carefully-hedged language

4  of the Post Order Review Sheet, the court cannot read the applicable post orders as

5  providing Tignor with the amount of carte blanche necessary to trigger the

6  discretionary function exception."  (*Ibid.*)  The Court made clear that discretion was

7  granted to administrators who formulated the Post Orders, but not to the guard who

8  was not afforded discretion in the order itself.  (*Id.* at 17)

9      Likewise, in *Garza v. United States*, 161 Fed. Appx. 341 (5th Cir. 2005), faced with

10  identical mandatory language with the "guideline" coda as here, the Court found that

11  the order that the guard "will patrol the recreational yard" granted "no discretion" to

12  the officer.  "To do so would violate a specific directive of the penitentiary.  Thus, the

13  failure to adhere to this provision is not protected by the discretionary function

14  exception."  (*Id.* at 344)

15      Such is the case here.  The Post Orders are clear: inmates must pass through the

16  metal detector.  Officer Raygoza had no discretion to disobey that, and he and his

17  supervisor have testified that they know that it is mandatory.

18      The discretionary function exception does not apply to this case.

19

20  Dated: 15 March 2011

21

22

23                    /s/ Anthony Boskovich

24      _____

                        Anthony Boskovich
                        Attorney for plaintiff

25

26

27

28  Plaintiff's Post-Trial Brief re Discretionary Function Immunity                    Page 8

Law Offices of Anthony Boskovich 28 North First Street, 6th Floor, San Jose, CA 95113  (408) 286-5150