1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| James Grandy, | ) | Case No. 2:09-cv-01270-JHN-RZ |
| | ) | |
| Plaintiff, | ) | |
| | ) | **POSTTRIAL FINDINGS OF FACT** |
| vs. | ) | **AND CONCLUSIONS OF LAW** |
| | ) | |
| United States of America, | ) | |
| | ) | Judge: Honorable Jacqueline H. Nguyen |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

On February 15–16, 2011, the Court held a bench trial on Plaintiff James Grandy's ("Plaintiff") negligence claim against the United States of America ("Defendant"). On March 16, 2011, the parties submitted post-trial briefs pursuant to the Court's request, addressing the narrow issue of whether the discretionary function exception applies to this case. (Docket Nos. 96, 97.) Having considered the evidence presented at the trial, and the parties' briefs, the Court now makes the following findings of fact and conclusions of law.[1]

---

[1] To the extent any findings of fact may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent any conclusions as stated may be deemed findings of fact, they shall also be considered findings.

**JURISDICTION AND VENUE**

1.   The Court has subject matter jurisdiction over Plaintiff's claim pursuant to 28 U.S.C. § 1346(b)(1).

2.   Venue is proper in the Central District of California pursuant to 28 U.S.C. § 1402(b).

**FINDINGS OF FACT**

1.   On November 25, 2006, Plaintiff was an inmate at United States Penitentiary in Victorville, California ("USP Victorville"), a high security penitentiary.

2.   He was assigned to housing unit 6A ("Unit 6A").

3.   At around 12:40 p.m., in Unit 6A, Plaintiff was attacked and stabbed multiple times by inmate Chevon Wiggins ("Wiggins").

4.   Wiggins was not assigned to Unit 6A and was not authorized to enter that unit.  Inmates who did not have authorization to enter the unit were considered to be "out of bounds."  There is no dispute that Wiggins was out of bounds at the time he assaulted Plaintiff.

5.   Inmates and staff at USP Victorville entered general housing units, such as Unit 6A, through a "sally port" area.  The sally port consisted of: (a) an outside door or slider that was operated by the control center, (b) a small room containing a metal detector, and (c) an inner door leading to the housing unit.

6.   An open movement was a regularly scheduled period of time during which inmates were allowed to move in and out of the housing unit through the sally port to access other areas of USP Victorville such as the recreation yard.  An open movement typically lasted about 10 minutes.  After the open movement, the unit was locked.

7.   Wiggins testified that, on the day of the attack, he was able to gain entry into Unit 6A during an open movement at around 12:00 p.m.  He had two weapons, including a sharpened butter knife, and evaded detection by walking

around the metal detector.[2]  Someone had earlier taken Wiggins' property, and he randomly chose Plaintiff to attack in retaliation because he was told by another inmate that Plaintiff was a Crip gang member.

8.  During an open movement, only one officer was assigned to monitor the sally port.  Officer Ray Raygoza ("Raygoza"), who was assigned to Unit 6A as a housing unit officer, was on duty at the sally port during the open movement on November 25, 2006.

9.  Wiggins entered Unit 6A on Officer Raygoza's watch.  An inmate assigned to Unit 6A, Horatio Smith, testified that he saw Wiggins bypass the metal detector during the open movement on the day of the attack.  Smith also testified that at the time Wiggins walked around the metal detector, the Officer on duty (Officer Raygoza) was posted outside the slider door, and was apparently at that moment looking away from the metal detector.

10.  USP Victorville had Post Orders describing the officers' duties.  The specific Post Order provision governing Officer Raygoza's duties as a unit officer stated in pertinent part:

**MOVEMENTS**

When the move is announced, Housing Unit Officers will be
stationed at the entrance/exit point of their unit.  Weather [sic] it is at

---

[2]  Wiggins' trial testimony was inconsistent with his declaration submitted by Plaintiff in connection with a motion for summary judgment.  In his pre-trial declaration, Wiggins testified that he walked *around* the metal detector.  However, at trial, Wiggins testified that he walked *through* the metal detector, but does not recall if the metal detector sounded.  When asked about his prior declaration, Wiggins reconciled the inconsistency by claiming that he walked into Unit 6A twice.  First, he went through the metal detector, then immediately went out of the unit to make sure he was not being followed, and then came in a second time by going around the metal detector.  Wiggins' trial testimony was confusing and inconsistent with his earlier statement, and the Court does not find Wiggins' testimony that he entered Unit 6A twice to be credible.  In any event, this inconsistency does not change the Court's analysis.

3

the front door to the unit, leading out to the compound or at the USP,
the door leading out to the corridor.  The Unit Officer should
monitor incoming and outgoing inmate traffic, randomly conducting
pat searches and if a metal detector is present, ensure each inmate is
clearing it.  The officer will remain in the immediate area of the front
door until the move is closed and the doors are locked.
(Exh. 50-23 (emphasis added).)

11.  Officer Raygoza testified that, consistent with his training and experience, he continuously rotated his position during the open movement rather than staying in one location.  One of his positions would be by the slider door right outside of the housing unit, so that he could visually monitor inmates entering and exiting the unit and in order to be on the lookout for illegal activity occurring right outside his unit.

12.  In the past, Officer Raygoza had seen inmates attempt to evade the metal detectors.  In such instances, he would call the inmate back and have him walk through the metal detector.

13.  He did not see Wiggins bypass the metal detector.

14.  Identifying out of bound inmates was difficult.  This was because each unit, including Unit 6A, housed between 95 to 115 inmates.  In addition to the number of inmates, the officers at USP Victorville rotated assignments every three months, and inmates were also frequently rotated to different housing units.  Thus, a housing unit officer might not know or recognize many of the inmates assigned to his particular housing unit.

15.  Officer Raygoza had been assigned to Unit 6A for approximately two months at the time of the attack.  He did not know Wiggins prior to the incident.

16.  The flow of inmate traffic during open movement could be quite rapid, with 20 to 30 inmates coming in and out at any one time.

17.  Officer Raygoza was not expected or required to confirm the identity of each inmate that he did not recognize during the open movement.  Captain Shawn Grant, assigned to USP Victorville, testified that officers commonly did not recognize many of the inmates, and stopping them at the door to confirm their

4

1   identity in each instance during open movement would allow a large group of

2   inmates to congregate at the entrance, creating a dangerous environment for both

3   the inmates as well as the lone officer.

4   ## CONCLUSIONS OF LAW

5   Whether the Court has Jurisdiction

6       1.   Plaintiff asserts a single negligence claim against Defendant pursuant to

7   the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671.

8       2.   The liability of the United States under the FTCA is subject to the

9   various exceptions, including the discretionary function exception ("DFE") at

10   issue in this case.  "That exception provides that the Government is not liable for

11   'any claim . . . based upon the exercise or performance or the failure to exercise

12   or perform a discretionary function *or* duty on the part of a federal agency or an

13   employee of the Government, whether or not the discretion involved be abused.'"

14   *United States v. Gaubert*, 499 U.S. 315, 322 (1991) (quoting 28 U.S.C. § 2680(a))

15   (emphasis added).  "Even if the decision is an abuse of the discretion granted, the

16   exception will apply." *Terbush v. United States*, 516 F.3d 1125, 1129 (2008)

17   (citing 28 U.S.C. § 2680(a); *Soldano v. United States*, 453 F.3d 1140, 1145 (9th

18   Cir. 2006)).

19       3.   The DFE "covers only acts that are discretionary in nature, acts that

20   'involve an element of judgment or choice,' and 'it is the nature of the conduct,

21   rather than the status of the actor' that governs whether the exception applies."

22   *Gaubert*, 499 U.S. at 322 (internal citations omitted).  "The requirement of

23   judgment or choice is not satisfied if a 'federal statute, regulation, or policy

24   specifically prescribes a course of action for an employee to follow,' because 'the

25   employee has no rightful option but to adhere to the directive.'" *Id.* (citations

26   omitted).

27

28

4.  "The burden of proving the applicability of the discretionary function exception is on the United States." *Bear Med. v. United States*, 241 F.3d 1208, 1213 (9th Cir. 2001).

5.  The Supreme Court has set out the test for determining whether the DFE applies. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988).  First, the court must determine whether the challenged action was discretionary or "governed by a mandatory statute, policy, or regulation." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005).  If the action is not discretionary, it cannot be shielded under the DFE. *Id.*  If the challenged action involves an element of choice or judgment, the Court must then proceed to the second step and determine "whether the challenged action is of the type Congress meant to protect—i.e., whether the action involves a decision susceptible to social, economic, or political policy analysis." *Id.*  Both the discretionary act prong and the policy judgment prong of the DFE must be satisfied in order for the exception to apply. *Sabow v. United States*, 93 F.3d 1445 (9th Cir. 1996).

6.  Here, the Court has subject matter jurisdiction because the DFE does not apply to this case.

7.  The Post Order provision governing Officer Raygoza's duties was specific and straightforward.  It sufficiently prescribed a course of action that the officer had to follow—monitor incoming and outgoing inmate traffic and ensure that they pass the metal detector if one is present.  While it is true that Officer Raygoza had to juggle various tasks in the course of monitoring the sally port area, including conducting random pat searches, he nevertheless "ha[d] no rightful option but to adhere" to the specific directive requiring him to monitor the sally port during the open movement. *Gaubert*, 499 U.S. at 322.  He could not, for example, leave the sally port entirely to attend to his other duties as a

1   housing unit officer.  Therefore, the DFE does not apply, and the Court has

2   subject matter jurisdiction over Plaintiff's negligence claim.[3]

3   <u>Whether Officer Raygoza was Negligent</u>

4       8.   In a claim under the FTCA, Defendant is liable to the same extent as a

5   private person under like circumstances and according to the law of the place

6   where the conduct complained of occurred.  *See* 28 U.S.C. § 1346(b)(1).

7   Accordingly, California law governs Plaintiff's negligence claim.

8       9.   To establish a claim for negligence under California law, Plaintiff must

9   show: (1) a legal duty to use due care; (2) a breach of that duty; and (3) that the

10  breach was the proximate or legal cause of the injury.  *Ting v. United States*, 927

11  F.2d 1504, 1513 (9th Cir. 1991).

12      10.  Defendant's duty to provide for the safekeeping, care, and subsistence

13  of federal prisoners "is not absolute but requires the exercise of ordinary diligence

14  under the circumstances."  *Williams v. United States*, 384 F. Supp. 579, 583–84

15  (D. D.C. 1974).  "Courts have consistently held that negligence is not established

16  by mere proof that the plaintiff was assaulted by a fellow inmate."  *Id.* (citations

17  omitted).

18      11.  Here, Plaintiff is required to prove by a preponderance of the evidence

19  that Officer Raygoza was negligent in carrying out his duties and, as a result,

20  _____

21      [3]  Defendant argues that the Post Order was not mandatory and served merely
22  as a guideline because it also contained the following language: "Post orders are
    issued as guidelines for the officers assigned to this post and are not intended to
23  describe in detail all of the duties assigned to this post." (Exh. 50-24.)  Despite this
24  caveat, however, the Court finds that the Post Order's specific description of the
    course of conduct for the officer to follow during the open movement deprived the
25  officer of the element of choice necessary to invoke the discretionary function
26  exception.  *See also, Brembry v. United States*, Case No. 7:10-cv-338, 2011 Lexis
    3302 at *17 (W. D. Va. Jan. 13, 2011) (rejecting similar language and finding the
27  discretionary function does not apply because of the Post Order's mandatory language
28  dictating where the officer was to post himself).

1   Plaintiff was injured.  Plaintiff has failed to sustain his burden of proof because
2   there is insufficient evidence that Officer Raygoza failed to exercise ordinary
3   diligence in discharging his duties during the open movement.

4        12.   The evidence indicates that 95 to 115 inmates were assigned to each
5   housing unit, including Unit 6A.  During the open movement, Officer Raygoza
6   was responsible for simultaneously conducting a multitude of tasks, including
7   monitoring inmates coming in and out of the unit, ensuring that they clear the
8   metal detector, and conducting random pat searches.

9        13.   The fact that Officer Raygoza was not aware that Wiggins had evaded
10  the metal detector, by itself, is not sufficient to establish negligence.  The
11  question is whether Officer Raygoza was reasonably diligent in carrying out his
12  duties under the circumstances.

13       14.   At the time Wiggins evaded the metal detector, Officer Raygoza was
14  posted right outside the slider door, monitoring the flow of inmates coming in and
15  out of the unit.  This was one of the positions where Officer Raygoza routinely
16  posted himself, and he continuously rotated between positions during the entire
17  open move.  It was not negligent to post himself immediately outside the slider
18  door because part of his monitoring duties included monitoring inmates coming
19  into the unit.  As Officer Raygoza testified, the vantage point immediately outside
20  the slider door allowed him to observe possible illegal activity right outside his
21  unit while still enabling him to see into the unit.

22       15.  Plaintiff established that, at the moment Wiggins bypassed the metal
23  detector, Officer Raygoza was looking away from the sally port area and did not
24  see Wiggins bypass the metal detector.  However, that Officer Raygoza may have
25  momentarily looked away to observe inmates immediately outside his unit does
26  not necessitate a finding that he was negligent, or that he deviated from the
27  behavior of a reasonable officer in his position.  Plaintiff presented no evidence

28

1   suggesting that Officer Raygoza failed to carry out his duties in the manner in
2   which he had been trained.

3       16.  Plaintiff called an expert witness, Joe McGrath, who had extensive
4   experience with the California corrections system, including as a former warden
5   at a high security California state prison.  McGrath, however, had never been
6   employed at a federal penitentiary, such as USP Victorville.

7       17.  McGrath testified that were an officer to conduct a random pat search,
8   he should pull the inmate aside and hold up the line entering the unit until the pat
9   search is done because it would be very difficult to monitor the metal detectors
10  and conduct a pat search at the same time.

11      18.  However, at USP Victorville, the flow of inmates during an open
12  movement could be very rapid and, given the limited time of the open movement,
13  holding up the line might have extended the time significantly.  Further, if there
14  were several inmates pulled aside waiting to be pat searched, it would not have
15  been a safe environment for an officer, given that he was alone with a large
16  number of inmates in the area.  For these reasons, the practice suggested by
17  Plaintiff's expert has not been employed at USP Victorville.  In any event, there
18  is no evidence that Wiggins evaded the metal detector due to Officer Raygoza's
19  pat search of inmates.

20      19.  McGrath also opined that an officer should check an inmate's
21  identification if he does not recognize the inmate as assigned to his unit.
22  However, at USP Victorville, an officer might not recognize many of the
23  residents assigned to his unit, and requiring him to check each inmate's identity
24  during an open move, with 20 to 30 inmates coming in and out at any given time,
25  would have created a dangerous situation for the inmates, as well as the lone
26  officer, by allowing a large group to congregate at the entrance.

27      20.  McGrath did not directly challenge Officer Raygoza's training or
28  practice of rotating his positions during the open movement, including the

1  decision to post himself immediately outside the slider door so as to observe both

2  incoming traffic and possible illegal activity right outside the unit.

3       21.  The evidence at trial established that Plaintiff was the victim of

4  inmate-on-inmate violence, an occurrence that is unfortunately all too common at

5  USP Victorville.  It does not, however, show that Officer Raygoza failed to

6  exercise ordinary diligence in monitoring the sally port, or that negligence on his

7  part caused Plaintiff's injuries.[4]

8                    **CONCLUSION**

9       Based on the foregoing, the Court finds that the discretionary function

10  exception does not apply, and that it has subject matter jurisdiction under the

11  FTCA.  However, Plaintiff has failed to establish that Officer Raygoza was

12  negligent in the performance of his duties.  Accordingly, Plaintiff's claim is

13  dismissed with prejudice.

14       **IT IS SO ORDERED.**

15  Dated:  December 16, 2011

16                    _____
                      Honorable Jacqueline H. Nguyen
17                    UNITED STATES DISTRICT COURT

18

19

20

21

22

23

24  _____

25       [4] Plaintiff also contends that Officer Raygoza was negligent in failing to detect
    Wiggins' presence in Unit 6A immediately after open movement.  However, it is
26  undisputed that census or official counts of inmates are regularly scheduled, and there
    was no count scheduled between the time the open movement ended and Wiggins'
27  attack of Plaintiff.  Therefore, Officer Raygoza was not negligent in failing to conduct
28  a census count.